## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI
## NO. 2019-KA-00473-COA

**WILLIAM ALAN GILLUM A/K/A GILLUM**                    **APPELLANT**
**WILLIAM A/K/A WILLIAM ALLEN GILLUM**

**v.**

**STATE OF MISSISSIPPI**                                **APPELLEE**

DATE OF JUDGMENT:               12/13/2018
TRIAL JUDGE:                    HON. JON MARK WEATHERS
COURT FROM WHICH APPEALED:      FORREST COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: MATTHEW WALTON
DISTRICT ATTORNEY:              PATRICIA A. THOMAS BURCHELL
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    REVERSED AND RENDERED IN PART;
                                SENTENCE VACATED IN PART -
                                09/08/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     William Gillum was convicted by a Forrest County Circuit Court jury of capital murder with the underlying felony of kidnapping (Count I), kidnapping (Count II), and forcible rape (Count III). The trial court sentenced Gillum to serve life without parole for Count I, thirty years for Count II, and thirty years for Count III, with the sentences to run consecutively in the custody of the Mississippi Department of Corrections (MDOC). Gillum appeals, claiming that his separate convictions for capital murder (Count I) and kidnapping (Count II) were a violation of his Fifth Amendment right against double jeopardy. Finding

merit to Gillum's argument, we reverse and render his kidnapping conviction and vacate the sentence for that conviction.

## FACTS AND PROCEDURAL HISTORY

¶2. In July 2016, Gillum met Shanna Harper and her boyfriend, Clayton Bexley, at a mutual friend's house. Their only interaction was "drug related"; the three of them would use drugs (methamphetamine and marijuana) together at either Gillum's house or the couple's trailer. Gillum appeared to have a crush on Harper; so she and Bexley used his fondness of her to obtain drugs from Gillum. A week after meeting, Gillum wanted to buy some meth. Harper knew a meth dealer; so Gillum picked her up, and they met with the dealer. According to Harper, Gillum gave her $450 to buy the meth. Harper and Bexley schemed to keep the meth for themselves, with Harper's swapping the bag of meth from the dealer with a bag of broken glass, which she then gave to Gillum. Afterward, Gillum sent text messages to Harper about getting ripped off. Harper replied that Bexley did not like the three of them hanging out together.

¶3. Harper and Bexley were evicted from their trailer on July 14, 2016; so they packed their belongings and planned to leave the next day. Bexley sent a text to Gillum, asking if he had any marijuana that he could bring to the trailer. After Harper and Bexley refused Gillum's invitation to come to his house for dinner, Gillum took some marijuana to the couple's trailer and smoked it with them. According to Harper, Gillum was acting "very odd, almost frantic, just very different, very scary." After Gillum returned home, he sent a text

2

to Harper, saying, "Damn, I guess I don't get my carpets cleaned."[1] Gillum also sent a text that he needed Bexley to help him fix a box fan. Although Harper and Bexley initially put him off, Gillum "made reference to the fact that . . . he had meth at his house" and came back to their trailer; so Harper and Bexley went to Gillum's house, where the three smoked some meth.

¶4. Harper said Gillum then "got pushy" and told her, "You need to go do the carpets," and he told Bexley, "I need you to come look at this fan." Gillum directed Harper to the cleaning supplies, and he and Bexley went outside. Shortly thereafter, Harper heard a loud noise, and Gillum walked in the kitchen door holding "a long gun with something tied around the end." According to Harper, Gillum threw the gun on the table and "attacked [her], grabbing [her] by the hair. . . and . . . yelling[,] 'You stole my money. You stole my money. You knew better, and now I'm going to teach you a lesson.'"

¶5. Gillum dragged Harper to his bedroom, punching and slapping her, and threw her on the floor, tying a rope around her hands. When she fought back, Gillum hit her in the face again and said he would kill Bexley if she did not stop fighting him. Gillum then tied Harper's wrists together, pulled her onto the bed, and tied the rope on her wrists to rope coming from underneath the bed. Gillum then tied her feet and ankles together and "tied them to a rope coming out of that side of the bed so that my - - if I moved my hands, my feet moved too." Harper said Gillum kept "talking about how he was going to punish me, punish [Bexley]. He was going to teach us a lesson so nobody else would ever try to rip him off."

---

[1] Gillum had bought Harper a phone card, and in exchange, she had agreed to clean the carpet at Gillum's house.

Gillum proceeded to rape Harper forcibly.[2] After he was finished, Gillum brought her a soda and "some type of Tylenol or something," and he said he was going to check on Bexley. Harper either fell asleep or blacked out.

¶6.    Harper awoke to Gillum's kissing her and saying that he had to go work. When Harper asked about Bexley, Gillum said, "Don't worry about [him]." Gillum told Harper about long-term plans he had: "[H]e said that he was going to save me . . . [t]hat he would have to keep me tied up for the first few weeks to build trust . . . [a]nd then he would let me go out in the yard or out in public if I could be trusted." Gillum asked Harper, "Are you going to be good while I'm gone to work?" Harper said, "Yes," and Gillum said that Harper would get the second part of her punishment when he got home from work. He also told her that Bexley was "gone."

¶7.    After he left, Harper managed to escape. Law enforcement was contacted, and the police found Bexley's deceased body wrapped in a quilt by a debris pile close to Gillum's house. A .22-caliber rifle and a projectile was recovered from Gillum's shed, and a .22-caliber shell casing was recovered from the steps leading into the house. Forensic pathologist Dr. Brent Davis later testified that Bexley's "cause of death was [a] gunshot wound to the head. The manner of death was homicide."

¶8.    Gillum was taken into custody, and gunshot residue kits were collected from Harper and Gillum. A rape kit was also conducted on Harper at the local hospital, and the sexual-assault nurse examiner noted "bruising to her face, bruising around her neck from choking,

_____

[2] Since Gillum is not challenging his conviction for forcible rape on appeal, we decline to go into the details of Harper's testimony regarding the rape.

'a suction injury to her neck,' and bruising to her inner thighs, lower legs and arm."

¶9.     On December 28, 2017, a Forrest County grand jury indicted Gillum for one count of capital murder with the underlying felony of kidnapping in violation of Mississippi Code Annotated section 97-3-19(2)(e) (Supp. 2015), one count of kidnapping in violation of Mississippi Code Annotated section 97-3-53 (Rev. 2014), and one count of forcible rape in violation of Mississippi Code Annotated section 97-3-65(4)(a) (Rev. 2014). At trial, Harper testified to the events as stated above. Gillum testified in his own defense. He claimed that he went to bed that night after smoking meth with Harper and Bexley, but woke up when Harper got into bed with him, naked, and that the two had sex. Gillum stated that he did not know why or how Bexley was killed, nor did he know how gunshot residue got on him or how Harper's injuries occurred. He testified that the rope found under the bed had been on his dresser on a spool when he left the house for work and that he did not know Bexley was dead when he left for work.[3]

¶10.    The jury found Gillum guilty on all three counts, and the court sentenced Gillum to a life sentence for capital murder without eligibility for parole, a thirty-year sentence for kidnapping, and a thirty-year sentence for forcible rape. Each sentence was ordered to be served consecutively in the custody of the MDOC. On December 21, 2018, Gillum filed a motion for judgment notwithstanding the verdict or, alternatively, a new trial, which the trial court denied. Aggrieved, Gillum filed his notice of appeal.

---

[3] Again, because Gillum has not challenged the sufficiency or weight of the evidence supporting his convictions on appeal, we find it unnecessary to discuss other witnesses' testimony at trial.

**DISCUSSION**

¶11.    Gillum's sole claim on appeal is that his separate convictions for capital murder and kidnapping constituted double jeopardy, and he requests that this Court "vacate" his conviction and sentence for kidnapping under Count II.[4]

¶12.    The Mississippi Supreme Court has held "that a capital murder defendant cannot be convicted of both capital murder and the underlying felony; the reason being that the defendant cannot be twice prosecuted for the same actions." *Wilcher v. State*, 697 So. 2d 1087, 1105 (Miss. 1997); *see also Holly v. State*, 671 So. 2d 32, 44 (Miss. 1996) (The State "is not allowed to punish a defendant for a crime containing elements which are completely enveloped by an offense for which a defendant was previously convicted.").

¶13.    In *Meeks v. State*, 604 So. 2d 748, 751 (Miss. 1992), the supreme court addressed the same scenario presented here—whether a defendant "may be punished for [s]ection 97-3-19(2)(e)/capital murder/kidnapping by a sentence of life imprisonment and thereafter by a consecutive thirty[-]year sentence for [s]ection 97-3-53 kidnapping."  While in the commission of kidnapping his estranged wife, Alvin Meeks shot and killed his wife's sister-in-law. *Id*. at 750.  He was charged with capital murder, kidnapping, burglary, and assault and subsequently convicted on all counts. *Id*. Discussing the United States Supreme Court's

---

[4] Gillum did not raise this issue prior to his appeal.  However, the Mississippi Supreme Court has held that "errors affecting fundamental constitutional rights," including the right against double jeopardy, "are excepted from the procedural bars." *Rowland v. State*, 42 So. 3d 503, 507 (¶12) (Miss. 2010), *overruled on other grounds by Carson v. State*, 212 So. 3d 22, 33 (¶38) (Miss. 2016); *see also Graves v. State*, 969 So. 2d 845, 846-47 (¶6) (Miss. 2007) (Although the defendant did not raise double-jeopardy claim prior to appeal, "as the protection against double jeopardy is a fundamental right," a procedural bar is not applicable.).

decision in *Blockburger v. United States*, 284 U.S. 299 (1932),[5] the supreme court in *Meeks* noted that "where no further evidence is needed to establish the lesser offense, once the prosecution has proved the greater offense, punishment for the lesser is barred." *Meeks*, 604 So. 2d at 751. "Put another way, the defendant may be convicted and punished for one of those offenses—the greater or the lesser included—but not both." *Id*. at 751-52. Thus, as "the legislature has prescribed death or life imprisonment, as the jury may determine, as the punishment for the murder/kidnapping variant of capital murder[,] . . . *Blockburger* on its face pretermits an additional thirty years imprisonment for the self-same kidnapping." *Id*. at 752. Because "Meeks could not have been found guilty of capital murder had he not been found guilty of kidnapping [his wife]," the supreme court concluded that his conviction for kidnapping subjected him to double jeopardy, and the kidnapping conviction and sentence was reversed and rendered. *Id*. at 753. While the State "admits concern over Gillum's conviction for kidnapping," it neither concedes error nor advances any argument to sustain the conviction.

¶14.    Gillum's convictions for capital murder *and* kidnapping violated his right against double jeopardy. Accordingly, we reverse and render the kidnapping conviction and vacate his thirty-year sentence for that conviction. Gillum's convictions and sentences on Counts I and III remain intact. *See Holly*, 671 So. 2d at 45 ("[W]here a defendant is improperly convicted for a lesser included offense, the proper remedy is to vacate both the conviction

---

[5] Addressing whether a defendant's right against double jeopardy has been violated, the *Blockburger* Court prescribed a same-elements test, instructing courts to determine whether each offense contains an element not present in the other; if not, they are labeled the same offense for double-jeopardy purposes. *Blockburger*, 284 U.S. at 304.

and sentence on the included offense, leaving the conviction and sentence on the greater offense intact.").

¶15. **REVERSED AND RENDERED IN PART; SENTENCE VACATED IN PART.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**